IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAZEIO REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 1:21-cv-649-ECM |
| ) | (WO) |
| TRAVIS CALHOUN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Cazeio Reynolds' ("Reynolds") action arises out of a traffic stop that occurred on January 10, 2020, conducted by Henry County sheriff deputies Travis Calhoun ("Calhoun"), Jonathan Elkins ("Elkins"), Chase Pynes ("Pynes"), and Damon Woodall ("Woodall") (collectively, "Defendants"). In his amended complaint (the operative complaint), Reynolds asserts four claims pursuant to 42 U.S.C. § 1983 and/or § 1985(3): excessive use of force (Count I), retaliatory arrest (Count V), failure to supervise (Count VI), and conspiracy to deprive him of equal protection (Count VII). Additionally, he asserts three state-law claims: malicious prosecution (Count II), false imprisonment (Count III), and assault and battery (Count IV). All claims are brought against the Defendants in their individual capacities.

Now pending before the Court is the Defendants' motion to dismiss for failure to state a claim. (Doc. 14). The motion is fully briefed and ripe for review. After careful

consideration, the Court concludes that the Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard

requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations omitted). Indeed, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted).

## IV. FACTS[1]

Reynolds' wife was driving in Newville, Alabama, at 11:30 p.m. on January 10, 2020, while Reynolds sat in the back seat with their young child. After noticing blue lights from a police car behind them, Reynolds' wife slowed down to about fifteen to twenty miles per hour to demonstrate, as the amended complaint puts it, that she was compliant and wanted to find a well-lit area to pullover. Elkins pulled his police vehicle in front of the Reynolds' vehicle to force it to stop. The Defendants then got out of their vehicles and approached the Reynolds' vehicle with guns drawn.[2] Reynolds alleges that Calhoun ordered them to show their hands out the window at least three times, each time with no response.

---

[1] This recitation of the facts is based on Reynolds' amended complaint. The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss. For purposes of ruling on the motion, the facts alleged in the amended complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Reynolds.

[2] It is not clear from the amended complaint which of the Defendants are alleged to have pointed their guns at the car.

Reynolds alleges he then responded, asking Calhoun what the deputies wanted and informing them who his father was. Calhoun answered that he did not care who Reynolds' father was and that if Reynolds did not cease being disrespectful, then Calhoun would arrest him for disorderly conduct.

Reynolds alleges that he and Calhoun spoke with raised voices because they could not hear each other given the distance between them and that the windows were rolled up. Reynolds then lowered the window and continued to speak, at least momentarily, in a raised voice until Calhoun and Pynes got closer to the car, at which time Reynolds alleges he lowered his voice. Calhoun threatened to arrest Reynolds for disorderly conduct for continuously interrupting the traffic stop with irrelevant information about his father.

Calhoun then grabbed Reynolds' door handle and ordered him out of the vehicle because he was under arrest. Reynolds alleges he got out calmly and with no verbal response. He complied with the Defendants' commands to get on the ground and was in the process of kneeling when Woodall allegedly tased him in the back, which caused Reynolds to collapse to the ground.

While lying face down on the ground, Reynolds claims Woodall continued to tase him, and the rest of the deputies got on top of him. A deputy was on Reynolds' leg and twisted his ankle, causing excruciating pain because it had been previously injured. Reynolds alleges he did not resist as the deputies pinned him to the ground, but instead cried out in pain, informing the deputies of his bad ankle. According to the amended complaint, no neighbors came out of their homes during the altercation. The Defendants

4

then put Reynolds in handcuffs and booked and detained him in the Henry County Jail for disorderly conduct. At a trial in Henry County Circuit Court, Reynolds was found not guilty of the disorderly conduct charges, despite all the Defendants offering testimony against him.

Reynolds filed his original complaint in this Court on September 30, 2021, naming as defendants the Henry County Sheriff in his individual capacity and each Defendant in their official and individual capacities. On November 22, 2021, Reynolds filed an amended complaint, naming as defendants only Calhoun, Elkins, Pynes, and Woodall in their individual capacities.

## V. DISCUSSION

The Defendants move to dismiss the amended complaint in its entirety. The Court will address Reynolds' claims brought pursuant to § 1983, the Alabama state-law claims, and then the § 1985(3) conspiracy claim.

### A. Claims pursuant to § 1983

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Reynolds contends that the Defendants deprived him of his Fourth Amendment right to be free from the use of excessive force during an arrest and his First Amendment right to be free from retaliation against protected speech.[3]

---

[3] Reynolds argues, albeit unclearly, that any qualified-immunity defense to both his First Amendment and Fourth Amendment claims must fail because at no point did the Defendants have probable cause to arrest him. His First Amendment claim for retaliatory arrest requires a probable-cause analysis.

5

The Defendants contend that they are entitled to qualified immunity from the claims brought under § 1983. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted).  To determine whether qualified immunity is appropriate, the Court must first determine whether the Defendants were acting within the scope of their discretionary authority. *See Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022).  The parties agree that conducting traffic stops and arrests were within the scope of the deputies' discretionary authority.[4]  Thus, Reynolds must next demonstrate that the Defendants (1) "violated [Reynolds'] constitutional right," and (2) that this right "was clearly established at the time of the alleged violation." *Id.*

---

However, the only Fourth Amendment claim he brings is for excessive use of force, which is distinct from a false arrest claim and does not require probable-cause analysis. *See Alston v. Swarbrick*, 954 F.3d 1312, 1319 (11th Cir. 2020) ("[A] claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." (quotations omitted)). Reynolds asserts that he was "entitled to exercise his right . . . to be free from unlawful seizures in the form of excessive force and retaliatory criminal cases," and that, "[e]ven if Defendants had arguable probable cause to arrest Plaintiff, their use of force was objectively unreasonable under the circumstances and violated Plaintiff's clearly established rights." (Doc. 19 at 5, 16).  However, Reynolds does not bring a claim pursuant to § 1983 for false arrest.

[4]  Although Reynolds argues the Defendants exceeded their discretionary authority during the traffic stop, he agrees that the Defendants' actions were taken while carrying out official sheriff deputy duties, which satisfies the threshold question for qualified-immunity analysis. (Doc. 19 at 5–6).  *See Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (explaining the two-fold discretionary authority inquiry: "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize").  At this stage, the Court "look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been" unconstitutional. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017).

1.     *Excessive Force Claim*

Because Reynolds alleges excessive force prior to and during his arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  Such freedom "encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (quotations omitted).  While the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion . . . , whether the force is reasonable depends on a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 737–38 (quotations omitted).  Reasonable force is judged "from the perspective of a reasonable officer on the scene." *Cantu v. City of Dothan*, 974 F.3d, 1217, 1229 (11th Cir. 2020) (quotations omitted).  The Court weighs (1) "the severity of the crime at issue," (2) whether the plaintiff "pose[d] an immediate threat to the safety of the officers or others," and (3) "whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The Court also considers (4) "the need for application of force," (5) "the relationship between the need and amount of force used," and (6) "the extent of the injury inflicted by the arresting officer." *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021).

Before the Court can determine whether the Defendants' force was reasonable, it must evaluate just how much force Reynolds alleges the Defendants used.  The Court

7

disregards Reynolds' allegations that the force "was excessive and objectively unreasonable" and that the Defendants failed "to take reasonable available steps to halt this use of excessive force." (Doc. 12 at 10, 11). Those assertions are "[t]hreadbare recitals of the elements of [Reynolds'] cause of action, supported by mere conclusory statements," and are thus insufficient to state those claims. *Iqbal*, 556 U.S. at 678. However, Reynolds provides more than that. He asserts that he left the vehicle calmly and "was kneeling to comply" when Woodall "tased [him] in the back." (Doc. 12 at 7). Then, while laying "face down" not resisting and still being tased by Woodall, the other deputies got on top of him and "twist[ed] his ankle, causing excruciating" and lasting pain. (*Id.* at 8). In light of these allegations and the *Graham* reasonable force factors, the Court finds that the facts alleged do not make it clear that the force used against Reynolds was objectively reasonable.[5]

Reynolds was arrested for disorderly conduct, a Class C misdemeanor, ALA. CODE § 13A-11-7(b), which is not a serious crime. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) ("*Graham* establishes generally that more force is appropriate for a more serious offense and less force is appropriate for a less serious one . . . ."). Reynolds (as the facts allege) did not present any immediate safety threat to the Defendants. The

---

[5] The Defendants' argument that the excessive force claim should be dismissed because it fails to identify which specific deputy committed each act is unavailing. Although Reynolds alleges that multiple deputies committed each act, his amended complaint is sufficient at this stage because he identifies the specific Defendants present at the arrest and that each participated by either pinning him to the ground, tasing him, or failing to intervene. *See Hunter v. City of Leeds*, 941 F.3d 1265, 1282 n.19 (11th Cir. 2019) (recognizing "that a plaintiff is not required to specifically identify which particular officer used excessive force (and which officers failed to intervene) in order to overcome summary judgment").

allegations demonstrate that the four deputies and the vehicle occupants were not in danger because Reynolds was unarmed and in the process of kneeling down.

While Reynolds alleges that his wife continued to drive at a slower speed when prompted to pull over and admits that he talked back to the deputies in a loud voice at the beginning of the traffic stop, at this stage of the proceedings, it is pertinent that Reynolds alleges that he fully complied with the Defendants' orders to get out of the vehicle and on the ground. The Court construes these facts in Reynolds' favor. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). Thus, because at this juncture there are no facts to suggest that Reynolds was resisting or otherwise evading arrest, this factor weighs in his favor.

Reynolds alleges that the deputies tased and pinned to the ground an unarmed, unthreatening, and compliant man being arrested for misdemeanor disorderly conduct. *See Fils v. City of Aventura*, 647 F.3d 1272, 1288–89 (11th Cir. 2011) (holding it was objectively unreasonable use of force to employ a taser on a compliant, nonthreatening suspect); *cf. Ingram*, 30 F.4th at 1252 ("Because [plaintiff] was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was body slammed, [defendant] used excessive force when apprehending [him]." (alterations adopted) (quotations omitted)). In sum, Reynolds has pleaded enough facts to demonstrate that it is plausible that the Defendants employed excessive force while effectuating his arrest.

9

Having found that Reynolds adequately alleged a constitutional violation against the Defendants, the Court must next determine whether this right was clearly established at the time they acted. *See Patel v. Lanier County*, 969 F.3d 1173, 1181 (11th Cir. 2020). A right is clearly established when its "underlying law" gave "the defendants fair warning that their alleged conduct [was] unconstitutional." *Id.* at 1184, 1186 (alterations adopted) (quotations omitted). To start, the Court must resist "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Reynolds can demonstrate that the law was clearly established in one of three ways: he can (1) point to a materially similar decision of the U.S. Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court; (2) establish that "a broader, clearly established principle should control the novel facts of the case"; or (3) show that the case is one that fits within the rare exception of conduct which "so obviously violated the Constitution that prior case law is unnecessary." *Patel*, 969 F.3d at 1186 (quotations omitted).

Parsing more finely to avoid defining clearly established law at a high level of generality, the Court asks whether, under the facts alleged in the amended complaint and in January 2020, it was clearly established law that the Constitution forbids deputies from tasing and pinning to the ground an unarmed, compliant man committing misdemeanor disorderly conduct? The Court concludes that it was. The Eleventh Circuit in *Stryker v. City of Homewood*, 978 F.3d 769 (11th Cir. 2020), recognized that in 2011 it "explicitly held—and thus clearly established—that employing a taser on a compliant,

10

nonthreatening suspect violates the Constitution." 978 F.3d at 775 (citing *Fils*, 647 F.3d at 1288–89).

Additionally, as to the deputies pinning Reynolds to the ground, the Court "conclude[s] that a broader, clearly established principle controls here." *Ingram*, 30 F.4th at 1252 (quotations omitted). Circuit precedent "hold[s] that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). The same rationale extends "to the use of gratuitous force when the excessive force is applied prior to the handcuffing but in the course of the investigation." *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 n.33 (11th Cir. 2017); *see also Patel v. City of Madison*, 959 F.3d 1330, 1340 (11th Cir. 2020) (rejecting the "argu[ment] that our precedent prohibiting the use of gratuitous and excessive force against non-resisting suspects applies only when the suspect is handcuffed"). Therefore, the Court is persuaded that, at this point in the proceedings, Reynolds has stated a claim for a violation of his clearly established Fourth Amendment right against the Defendants.

### 2. *First Amendment Claim*

Reynolds also alleges that Calhoun violated his First Amendment rights by charging him with a crime in retaliation for his exercise of protected speech. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. The Amendment protects both "the affirmative right to speak" and "the right to be free from retaliation by a public official for the exercise of

11

that right." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (quotations omitted).

To assert a First Amendment retaliation claim, a plaintiff must allege (1) he "engaged in constitutionally protected speech," (2) "the defendant's retaliatory conduct adversely affected that protected speech and right to petition," and (3) "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *Id.* at 1289. To establish the causal connection element, if the plaintiff alleges "the governmental defendant has utilized the legal system to arrest or prosecute the plaintiff," then courts "require the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution." *Id.* (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019)). Existence of probable cause vitiates a First Amendment retaliation claim.

Reynolds' amended complaint satisfies the first two requirements for a retaliation claim. Reynolds had the First Amendment right to verbally "oppose or challenge police action without thereby risking arrest." *City of Houston v. Hill*, 482 U.S. 451, 463 (1987) (overruling as unconstitutionally overbroad a city ordinance that made it unlawful to "interrupt a police officer in the performance of his or her duties"); *Skop v. City of Atlanta*, 485 F.3d 1130, 1139 (11th Cir. 2007). According to Reynolds, his speech was both challenging Calhoun by asking why they were pulled over and interrupting him in the course of conducting a traffic stop. Reynolds had a constitutional right to do both. Calhoun's alleged retaliation also "adversely affected" Reynolds' exercise of his

constitutional right because arresting an individual for exercising First Amendment rights "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *DeMartini*, 942 F.3d at 1289 & n.8 (quotations omitted).

At this stage, the Court finds facts sufficiently alleged that there was no probable cause to arrest Reynolds, satisfying the third prong of his retaliation claim. The Supreme Court clarified that "probable cause speaks to the objective reasonableness of an arrest[—]its absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Nieves*, 139 S. Ct. at 1724. Probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004), *abrogated in part on other grounds by Nieves*, 139 S. Ct. 1715. In the § 1983 context, "a police officer may be entitled to qualified immunity even if there was no actual probable cause for an arrest, so long as there was *arguable* probable cause." *Windham v. City of Fairhope*, 597 F. App'x 1068, 1071 (11th Cir. 2015) (emphasis in original) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003)).

To determine whether the facts as alleged show Calhoun had at least arguable probable cause to arrest Reynolds for disorderly conduct, the Court must examine the statutory text. The Alabama disorderly conduct statute provides: "A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she . . . [m]akes unreasonable noise."

ALA. CODE § 13A-11-7(a)(2).  Reynolds admits he spoke to the deputies with his window down in a raised voice; however, "merely making a loud noise is not sufficient to violate this statute." *Lambert v. Herrington*, 2022 WL 2345769, at *5 (11th Cir. June 29, 2022) (citing *Swann v. City of Huntsville*, 455 So. 2d 944, 950 (Ala. Crim. App. 1984)). Disorderly conduct, in Alabama, "requires making a noise that is unreasonable under the circumstances." *Id.*

The reasonableness of Reynolds' raised voice and interruptions in this circumstance remains to be determined.  At this juncture, construing the facts favorably to Reynolds, he alleges that he used a raised voice so the deputies could hear him. *See id.* (holding that qualified immunity was improper because a question remained as to the reasonableness of the plaintiff's loud noise under Alabama's disorderly conduct statute when she screamed at the officers and cussed at a bystander).  After the deputies approached the vehicle, Reynolds contends that he lowered his voice.  Additionally, he used no obscene language, and no neighbors came out of their houses at the sound of his voice.  The Court cannot conclude at this stage that Reynolds can prove no set of facts which would show a lack of probable cause to arrest him for disorderly conduct. *Cf. Walker v. Briley*, 140 F. Supp. 2d 1249, 1258–59 (N.D. Ala. 2001) (finding that "to avoid potential First Amendment infirmities," Alabama courts have "sharply and consistently limited what conduct and attendant circumstances are required for a violation of the disorderly conduct statute, especially where the defendant is addressing a police officer, and even more so where such exchange is not heard by other members of the public").

Because the Court cannot conclude at this stage of the proceedings the reasonableness of Reynolds' raised voice and interruptions, it also cannot determine whether the law underlying his constitutional claim was clearly established at the time of the incident. *See Patel*, 969 F.3d at 1184. The Court, therefore, concludes that the Defendants are not entitled to dismissal on Reynolds' First Amendment claim.

### 3. *Supervisor Liability Claim*

Reynolds asserts that Elkins' presence at the scene of the arrest as a supervisor and his failure to intervene with the alleged unconstitutional use of force by his subordinates renders him liable as a supervisor. Supervisors can be liable when they "personally participate[] in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008) (quotations omitted), *overruled in part on other grounds by Iqbal*, 556 U.S. 662, *as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). A plaintiff can demonstrate a causal connection between the supervisor's actions and the constitutional deprivation by presenting facts that give rise to the "inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quotations omitted). To bring a "failure to stop claim under a theory of supervisory liability," Reynolds must allege that Elkins (1) had "the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate

who commits the constitutional violation," and (2) "subsequently fail[ed] to exercise that authority to stop it." *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010).

The Court finds that Reynolds has alleged sufficient facts that Elkins, as a supervisor, personally participated in the unconstitutional use of force and knew his subordinates were using unconstitutional force, had the ability to stop them from using that force, and failed to intervene. *See id.* (holding plaintiff pleaded sufficient facts to find superior officers liable for subordinate officers' constitutional violations because they "knew that the subordinate officers would engage in unlawful conduct in violation" of the Constitution and they "fail[ed] to stop such action in their supervisory capacity"). The Court has already concluded the amended complaint contains sufficient facts to allege an unconstitutional use of force against all Defendants. The amended complaint also alleges that Woodall continued to tase a compliant and nonthreatening Reynolds while the other deputies, Elkins included, pinned him to the ground. At this stage, therefore, Reynolds sufficiently alleges that Elkins personally participated in and knew of the unconstitutional use of force by his subordinates, yet he failed to intervene. The motion to dismiss on this basis is due to be DENIED.

**B.     State-Law Claims**

Reynolds brings state-law claims for malicious prosecution, false imprisonment, and assault and battery against all Defendants. The Defendants argue that these claims

should be dismissed based on state immunity.[6] The Alabama Constitution provides: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. art. I, § 14. State immunity under § 14 is a complete bar to litigation as it "strips courts of all power to adjudicate claims against the State." *Ex parte Pinkard*, 2022 WL 1721483, at *4 (Ala. May 27, 2022). It applies to "suits against the State and its agencies" and "to 'official-capacity' suits against State officers, employees, and agents." *Id.* (citation omitted). An official-capacity claim seeking money damages, therefore, is "an impermissible attempt to reach 'the public coffers': damages awarded against a State agent in his official capacity presumably would come from the State treasury rather than the agent's personal assets." *Id.* (citation omitted). An individual-capacity claim against a state official, rather an official-capacity claim, seeks to hold that "government official or employee personally liable, and . . . it demands [monetary recovery] from the individual himself rather than from a governmental entity or the State treasury. *Id.* at *5 (quotations omitted).

The Defendants contend that state immunity bars this litigation because the Defendants' alleged liability arose solely out of actions taken in their official positions as sheriff deputies. (Doc. 15 at 18–19). They rely on *Ex parte Cooper*, 2021 WL 4471018 (Ala. Sept. 30, 2021) for the proposition that, under the Alabama Supreme Court's decision in *Barnhart v. Ingalls*, 275 So. 3d 1112 (Ala. 2018), state immunity applies to

---

[6] The Alabama Supreme Court noted that its recent jurisprudence favors the title "state immunity" over other titles for this jurisdictional bar, such as "§ 14 immunity," "sovereign immunity," or "State-sovereign immunity." *Ex parte Pinkard*, 2022 WL 1721483, at *4 n.3 (Ala. May 27, 2022).

any suit against a state officer that is sued for the breach of duties that "existed solely because of their official positions." *Ex parte Cooper*, 2021 WL 4471018, at *1 (citing *Barnhart*, 275 So. 3d at 1126).

But the Alabama Supreme Court in *Ex parte Pinkard* overruled *Barnhart* and *Ex parte Cooper*, holding that a plaintiff can indeed seek monetary damages against state officials for breach of official duties so long as they seek relief from the individual rather than "the public coffers." *Ex parte Pinkard*, 2022 WL 1721483, at *4–5 (quotation omitted). The Alabama Supreme Court rejected the state immunity rule argued for by the Defendants and held "that State immunity does not bar claims that name and seek relief only from individual officers in their personal capacity." *Id.* at *7. Therefore, because Reynolds seeks monetary damages from the Defendants in their individual capacities for the alleged breaches of their official duties, state immunity does not apply. The Defendants' motion to dismiss based on state immunity is due to be DENIED.

C.   **Conspiracy Claim Pursuant to § 1985(3)**

Reynolds' § 1985(3) conspiracy claim is a bare legal assertion that does not survive a motion to dismiss. He alleges the Defendants unlawfully conspired to deprive him of his civil rights by detaining, tasing, restraining, jailing, and maliciously prosecuting him on account of his expression of constitutionally protected speech. Reynolds, however, pleads no facts describing how, when, where, or for what purpose these Defendants formed this alleged conspiracy. At best, Reynolds alleges actions undertaken by the Defendants collectively and then asserts a conspiracy, without

specifying when Defendants had time to conspire or "reach[] an understanding to deny [Reynolds'] rights." *Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013) (quotations omitted). These "conclusory allegations without specific supporting facts are insufficient" to survive a motion to dismiss. *Id.* (quotations omitted). Therefore, Reynolds' conspiracy claim is due to be DISMISSED.

## VI. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendants' Motion to Dismiss (doc. 14) is GRANTED with respect to Count VII, which is DISMISSED. It is further

ORDERED that the Defendants' Motion to Dismiss (doc. 14) is DENIED in all other respects.

Done this 19th day of September, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE